UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COPELAND PIZZA, | ) |
| Plaintiff, | ) |
| v. | ) |
| JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security, ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services; and DANIEL M. RENAUD, Director, Vermont Service Center, U.S. Citizenship and Immigration Services, | ) Civil Action No. 13-11437-DJC |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                          **August 6, 2014**

### I.  Introduction

Copeland Pizza ("Copeland") has filed this lawsuit against U.S. public officials Janet Napolitano, Alejandro Mayorkas and Daniel Renaud ("Defendants"), seeking reversal of Defendants' denial of an application for an immigrant visa that Copeland filed on behalf of Eleutherios Spirou ("Spirou").  D. 1.  Defendants have moved to dismiss the complaint and affirm Defendants' decision denying Copeland's application for a visa.  D. 12.  For the reasons stated below, the Court ALLOWS the motion.

### II.  Standard of Review

Under the Administrative Procedure Act ("APA"), a federal court may set aside final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C. § 706(2)(A).  This Court's review under this standard "is highly deferential, and the agency's actions are presumed to be valid."  River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (2009).  The court "is not to substitute its judgment for that of the agency"; it should only ensure that the agency "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983).  The Court must affirm the agency's action as long as it is supported by a rational basis.  River St. Donuts, 558 F.3d at 114.

## III. Factual Background

Copeland Pizza is a business with a principal place of business in Massachusetts.  D. 1 ¶ 2.  On April 30, 2001, Copeland filed an Application for Alien Employment Certification with the Department of Labor to petition for Spirou, a citizen of Greece, to be an employee at Copeland.  Id. ¶ 9.  On December 24, 2002, the Department of Labor approved Copeland's application.  Id. ¶ 10.  On May 6, 2005, Copeland filed a petition for an "I-140" visa with the United States Citizenship and Immigration Services ("USCIS"), based upon the Department of Labor's certification of Spirou's position at Copeland as a pizza maker.  Id. ¶ 11; D. 1-4 at 2.

The administrative record in this case ("R. __") indicates that Spirou began working at Copeland in 1989, R. 108, or 1997, R. 266.  Although he began working as a driver, he was later promoted to making pizzas and subs for customers.  Id.  On his Application for Alien Employment Certification filed with the U.S. Department of Labor, Copeland's application stated that the position Spirou would hold would be "pizza maker" which required two years of high school and no training or experience.  R. 244.  Copeland indicated that Spirou would "prepare[] and bake[] pizza pies," and indicated in the "special requirements" section of the form

2

that the job required Spirou to "[e]xercise showmanship in preparation of food, such as tossing pizza dough in the air to lighten texture." Id.

On October 13, 2005, however, Copeland's owners Stergios and Despina Versamis, submitted a letter in support of Spirou, which although it praised him as a worker, stated that Spirou could not "'toss pizza dough in the air to lighten texture' as this is a characteristic of Italian specialty pizzas." R. 236.

The USCIS issued a request for evidence including an explanation that Spirou lacked the ability to toss pizza in the air to lighten texture. R. 60. The USCIS noted that a "petition may not be approved if the beneficiary was not qualified at the priority date." Id. (citing Matter of Katigbak, 13 I&N Dec. 45, 49 (Comm. 1971)). In response, Copeland submitted an unsigned affidavit from Despina Varsamis (although her name was spelled "Varsmis" on the affidavit) stating, in relevant part, "Eleftherios Spirou is a pizza maker . . . and has the ability to toss pizza dough in the air to lighten texture." Id. at 29. Nevertheless, Varsamis did not reconcile this statement with her previous statement that Spirou lacked this skill. Similarly, on the same date, Copeland submitted an unsigned and undated affidavit from Antonio Bandis, former owner of Copeland, which also purported to attest to Spirou's skills in this regard. Id. at 30. Copeland did not submit any independent objective evidence in support of its contention that Spirou had special skill to fulfill the "showmanship" requirement.

On October 27, 2006, Defendants denied the I-140 petition and on April 5, 2013, Defendants denied the administrative appeal of that denial. D. 1 ¶ 12. Defendants provided numerous bases for that denial: (1) that Copeland had not demonstrated by clear and convincing evidence that the marriage between Spirou and his spouse was *bona fide*, id. ¶ 17; (2) that Copeland did not demonstrate that its offer of employment to Spirou was realistic, because it had

3

not shown that it had the ability to pay his salary, id. ¶ 18; (3) that Copeland had not demonstrated that Spirou had the requisite skills to perform his job at Copeland, id. ¶ 19; (4) I-140 was improperly filed by a previous owner of Copeland Pizza even though it was filed after transfer of ownership of Copeland to the current owner, D. 1-4 at 4; and (5) Spirou's job offer may not be *bona fide* due to a familial relationship, id. at 10.

Defendants' third ground for denial, i.e., that Copeland had not demonstrated that Spirou had the requisite skills to perform his job at Copeland, is the focus of Defendants' motion to dismiss. The Defendants noted in their denial that the underlying labor certification required that the applicant be able to "[e]xercise showmanship in preparation of food, such as tossing pizza dough in air to lighten texture." D. 1-4 at 8. In concluding that Copeland had not demonstrated that Spirou could meet this requirement, they pointed to the letter dated October 13, 2005, signed by Copeland's owners, that was offered in support of the Spirou's employment:

> Although the letter speaks of the beneficiary's ability to multi-task, it does not endorse his showmanship and specifically disclaims the beneficiary's ability to toss pizza dough in the air as "unfortunately, [Spirou] cannot 'toss pizza dough in the air' to lighten texture," and that they "have machines that flatten the dough to the required size." It is further noted that an unsigned draft of a statement from Despina "Varsmis" submitted in response to the AAO's request for evidence now states that the beneficiary "has been employed by [Copeland] continuously even prior to filing the LCA [labor certification] in April of 2001, and has the ability to toss pizza dough in the air to lighten texture." In addition to being unsigned, the statement does not clearly document that [Spirou] had any such skills before the priority date. An unsigned statement is not probative of the [Spirou's] abilities. Further, as the priority date of April 30, 2001 is the date that the beneficiary must have obtained such skills, and the prior letter of October 13, 2005 from Despina Varsamis specifically contradicted the claim contained in the unsigned statement, we do not find the statement credible. Doubt cast on any aspect of the petitioner's proof may, of course, lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition. It is incumbent on the petitioner to resolve any inconsistencies in the record by independent objective evidence, and attempts to explain or reconcile such inconsistencies, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice.

4

Id. at 9 (citing Matter of Ho, 19 I&N Dec. 582, 591-592 (BIA 1988)). Defendants also noted that unsigned letters from Antonios Bandis described Spirou's ability to deal with customers, but do not mention Spirou's ability to satisfy the "showmanship" requirement. Defendants further noted the fact that unsigned statements are of "no probative value." Id.

## IV. Procedural History

Copeland filed this lawsuit on June 14, 2013. D. 1. Defendants have now moved to dismiss the complaint or alternatively affirm Defendants' administrative decision. D. 12. In their memorandum in support of its motion to dismiss, Defendants limited their argument to one of the five grounds for the AAO's affirmation of the denial of Copeland's petition, D. 13 at 2 (noting that the Defendants need only show that one of the five bases relied upon by the AAO provided a rational basis for that administrative decision): namely, that Copeland failed to meet its burden of demonstrating that Spirou has the skills required for the position at Copeland as described in the labor certification.

## V. Discussion

### A. **Copeland Was Required to Demonstrate that Spirou Was Eligible for a Visa**

Betancur v. Roark, No. 10-11131-RWZ, 2012 WL 4862774 (D. Mass. Oct. 15, 2012) provides a cogent summary of the process by which immigrant visas are issued:

> A brief review of the employment-based immigration system is necessary to understand this case. Under 8 U.S.C. § 1153(b)(3), approximately 40,000 visas are available each year for immigrant "[s]killed workers, professionals, and other workers." Id. Obtaining permanent residency through one of these visas normally requires following a three-step process. First, the immigrant's prospective employer obtains a certification from the Department of Labor showing that there are no able and willing United States workers available for the position, and that hiring the immigrant will not adversely affect the wages and working conditions of similarly employed workers here. 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A)(I). Employers formerly applied for those certifications using Form ETA-750. That form has two parts: Form ETA-750A, on which the employer describes the job offered, and Form ETA-750B, on which the prospective employee describes his qualifications for that job. Second, after

5

> the Department of Labor issues the required labor certification, the employer files a Form I–140 petition with USCIS to obtain an employment-based visa for the immigrant. 8 C.F.R. § 204.5(a), (c). Because the employer files the I–140, the employer is known in this context as the "petitioner," while the immigrant to be employed is the "beneficiary." Third, if USCIS approves the I–140, the immigrant may apply to become a permanent resident using Form I–485. The immigrant's I–485 may be submitted concurrently with the I–140 petition.

Betancur, 2012 WL 4862774, at *1. The Petitioner, Copeland in this case, "carries the burden of proving eligibility for a visa." River St. Donuts, LLC v. Chertoff, No. 06-40049 FDS, 2007 WL 2259105, at *2 (D. Mass. Aug. 3, 2007) (citing Chi-Feng Chang v. Thornburgh, 719 F. Supp. 532, 535 (N.D. Tex. 1989), aff'd sub nom., River St. Donuts, LLC v. Napolitano, 558 F.3d 111 (1st Cir. 2009)). To meet its burden, Copeland must have "demonstrate[d] that the beneficiary meets the minimum requirements to perform the job satisfactorily." River St. Donuts, 2007 WL 2259105, at *2 (citing Elatos Restaurant Corp. v. Sava, 632 F. Supp. 1049, 1053 (S.D.N.Y. 1986)).

### B. Copeland Has Not Met Its Burden of Establishing that Defendants' Denial of Copeland's Petition Was Arbitrary and Capricious

Defendants argue that the conflicting evidence regarding Spirou's ability to satisfy the job requirements demonstrates that Copeland did not meet its burden to demonstrate that Spirou was qualified for the position of pizza maker. D. 13 at 9. Defendants point to the October 13, 2005 letter signed by the owners of Copeland that admit that Spirou lacked the ability to toss pizza in the air. Id. Copeland counters that the "special requirement" listed on the labor certification does not necessarily require Spirou to be able to do so, but rather merely possess the ability to exercise "showmanship" in the position. R. 244. The Court agrees. The USCIS is obligated to "examine the certified job offer exactly as it is completed by the prospective employer." SnapNames.com, Inc. v. Chertoff, No. 06-65-MO, 2006 WL 3491005, at *7 (D. Or. Nov. 30, 2006) (quoting Rosedale & Linden Park Co. v. Smith, 595 F. Supp. 289, 833 (D.D.C.

6

1984)). Here, the labor certification states that the beneficiary must "[e]xercise showmanship in preparation of food, *such as* tossing pizza dough in the air." R. 244 (emphasis added). This language suggests that "showmanship" is the true requirement and that "tossing pizza in the air" is merely an example of same. Accordingly, the Court need only determine whether Defendants acted arbitrarily or capriciously in determining that Copeland presented insufficient evidence as to Spirou's ability to exhibit "showmanship."

Regardless of the Court's conclusion above as to the nature of Spirou's job requirements,[1] the Court concludes that Defendants did not act arbitrarily or capriciously in making its determination where Copeland presented insufficient evidence as to Spirou's ability to exhibit "showmanship." Even accepting Copeland's definition of the term, "showmanship" would require Spirou to perform his duties in a dramatic manner. D. 19 at 5 (citing dictionary definition of showmanship). The exemplar of tossing pizza only furthers the Court's understanding of this definition. However, the Court has not gleaned any evidence in the record of Spirou's ability to exhibit such skill in the performance of his job duties.

Copeland tries to save its claim by arguing that Spirou's ability to multitask and effectively operate the machine that Copeland uses to flatten dough can be characterized as demonstrating "showmanship." D. 19 at 5-6. However, the Court cannot say that, to the extent this argument was ever squarely presented to Defendants, it was arbitrary or capricious for the

---

[1] The Court notes, however, that were Copeland to rely here only upon the proffered evidence presented to the AAO, namely about Spirou's ability to toss pizza in the air as evidence of Spirou's ability to exhibit showmanship, the Court would not reach a different outcome. The Defendants weighed the conflicting evidence of Spirou's abilities, rationally doubting the reliability of unsigned and undated affidavits against the weight of Copeland's letter asserting that Spirou did not possess this particular skill. D. 1-4 at 17-18. Njenga v. Ashcroft, 386 F.3d 335, 339 (1st Cir. 2004) (finding unsigned affidavits and inconsistent testimony were not credible evidence supporting application); Hernandez v. Gonzales, 195 Fed. App'x 439, 441 (6th Cir. 2006) (same). It was not arbitrary and capricious for the AAO to have reached this conclusion.

AAO to make the findings it did on the record presented to it and where the showing of "showmanship" that Copeland now presses would mean that all employees who effectively performed their jobs would qualify for the special requirements of this position.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss and AFFIRMS the administrative decision, D. 12.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge